**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAMID RAVANSARI, derivatively on behalf of INSYS THERAPEUTICS, INC., <br><br>     Plaintiff, <br><br>  v. <br><br> JOHN N. KAPOOR; MICHAEL BABICH; DARRYL S. BAKER; PATRICK FOURTEAU; PIERRE LAPALME; STEVEN MEYER; BRIAN TAMBI; THE ESTATE OF DR. THEODORE STANLEY; AND SANTOSH J. VETTICADEN, <br><br>     Defendants, <br><br>  and <br><br> INSYS THERAPEUTICS, INC., <br><br>     Nominal Defendant. | Case No.:  1:18-cv-07026-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Michael*
*Babich, Darryl S. Baker, Patrick*
*Fourteau, Pierre Lapalme, Steven*
*Meyer, Brian Tambi, Santosh J.*
*Vetticaden and Nominal Defendant*
*Insys Therapeutics, Inc.*

November 9, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

BACKGROUND ...................................................................................................... 2

    A.    Criminal Action ........................................................................................ 2

    B.    Securities Class Actions ........................................................................... 3

    C.    Derivative Actions .................................................................................. 4

    D.    The Current Action ................................................................................. 7

ARGUMENT ........................................................................................................... 8

I.    THIS DERIVATIVE ACTION SHOULD BE STAYED. ................................................. 8

    A.    Plaintiffs Would Not Be Unduly Burdened by a Stay. ............................. 9

    B.    Defendants Would Be Significantly Burdened If This Action Were To Proceed. .................................................................................................. 11

    C.    A Stay Will Promote Judicial Economy. ............................................... 14

    D.    A Stay Will Promote the Public Interest. ............................................... 15

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blecker v. Lazard Freres & Co.*, No. 73 CIV. 4057, 1973 WL 451 (S.D.N.Y. Dec. 11, 1973) ................................................................................................................14

*Brenner v. Albrecht*, 2012 WL 252286 (Del. Ch. 2012)..............................................................11

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Protection Agency*, 630 F. Supp. 2d 295 (S.D.N.Y. 2009).........................................................................9

*In re DaVita Inc. Stockholder Derivative Litig.*, No. CV 17-152-MPT, 2018 WL 3105061 (D. Del. June 25, 2018) ..............................................................................12

*In re First Solar Derivative Litig.*, No. CV-12-00769-PHX-DGC, 2012 WL 6570914 (D. Ariz. Dec. 17, 2012) ...........................................................................12

*In re Groupon Derivative Litig.,* 882 F. Supp. 2d 1043 (N.D. Ill. 2012).....................................12

*In re Insys Therapeutics, Inc. Deriv. Litig.*, No. 12696-VCMR, 2017 WL 5953515 (Del. Ch. Nov. 30, 2017)...........................................................................4, 5, 14

*In re Massey Energy Co.*, C.A. No. 5430-VCS, 2011 WL 2176479 (Del. Ch. May 31, 2011) ...................................................................................................................11

*In re Ormat Techs., Inc.*, 2011 WL 3841089 (D. Nev. Aug. 29, 2011).........................................12

*In re Salomon Smith Barney Mut. Fund Fees Litigation*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006) ...........................................................................................................8

*In re STEC, Inc. Derivative Litig.*, No. CV 10-00667-JVS (MLGx), 2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ...........................................................................12, 13

*In re Vivendi Universal, S.A. Securities Litigation*, 381 F. Supp. 2d 129 (S.D.N.Y. 2003) .........................................................................................................................10

*Kelleher v. ADVO*, No. 3:06CV01422 (AVC), 2007 WL 1232177 (D. Conn. Apr. 24, 2007) ...................................................................................................................10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ...................................................................................8

*LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005) .......................................9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012).....................................8

*Milliken v. Am. Realty Capital Hospitality Advisors, LLC*, No. 18-CV-1757
(VEC), 2018 WL 3745669 (S.D.N.Y. Aug. 7, 2018) .................................................8, 13, 14, 15

*Readick v. Avis Budget Grp., Inc.*, No. 12 CIV. 3988 PGG, 2014 WL 1683799
(S.D.N.Y. Apr. 28, 2014) .................................................................................................................9, 14

*Rosenblum ex rel. Amgen, Inc. v. Sharer*, No. CV 07–6140 PSG (PLAx), 2008
WL 9396534 (C.D. Cal. July 28, 2008) ....................................................................................12

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 17-CV-
5916(AJN), 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) ................................................14

*Sellers on behalf of Nominal Defendant 21st Century Holding Co. v. Lawson*, No.
08-60374-CIV-COHN/SELTZER, 2009 WL 10698793 (S.D. Fla. Mar. 30,
2009) ..........................................................................................................................................................12

*Sprecite Design, LLC v. Elli N.Y. Design Corp.*, 16 Civ. 6154 (ER), 2017 WL
3105859 (S.D.N.Y. July 20, 2017) ............................................................................................15

*Walner v. Friedman*, 410 F. Supp. 29 (S.D.N.Y. 1975) ..................................................................12

## Statutes & Rules

DEL. CODE ANN., 8 § 141(c)(2) (1953) ..........................................................................................5

Securities Exchange Act of 1934 ................................................................................................... passim

Defendants John N. Kapoor, Michael Babich, Darryl S. Baker, Patrick Fourteau, Pierre Lapalme, Steven Meyer, Brian Tambi, Santosh J. Vetticaden (collectively, the "Individual Defendants") and Nominal Defendant Insys Therapeutics, Inc. ("Insys" or the "Company") (collectively, "Defendants") respectfully move to stay this derivative action pending the resolution of ongoing civil and criminal actions involving Insys and certain of the Individual Defendants.

This is the third in a series of identical derivative actions filed by the same attorneys against the same defendants.  The first two derivative actions—*Soltau v. Kapoor, et al.*, No. 2:18-cv-01720-DWL (D. Ariz.) and *Bennett v. Kapoor, et al.*, No. 18-cv-02170-DWL (D. Ariz.)—were consolidated and stayed *with the consent of the plaintiffs* on September 12, 2018.  (*See* Declaration of Morgan J. Cohen ("Cohen Decl."), Ex G.)  Nearly a month later, the Plaintiff in this action—who is represented by the same attorneys who consented to the stay of the consolidated *Soltau* action—served a copy-cat complaint (the "Complaint") on Nominal Defendant Insys.

The Complaint is a word-for-word copy of the operative complaint in the consolidated *Soltau* action.  Plaintiff, a putative Insys stockholder, alleges that the Individual Defendants, all former officers and former or current directors of Nominal Defendant Insys, violated their fiduciary duties by causing the Company to violate Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and to engage in misconduct related to the purported off-label promotion of drug products and the commission of insurance fraud.

These allegations—and, thus, the allegations in *Soltau*—overlap substantially with allegations asserted in several civil and criminal actions that are currently pending against

Insys and certain of the Individual Defendants.  Accordingly, in *Soltau*, upon the *joint* motion of the parties, the U.S. District Court for the District of Arizona stayed the proceedings on the grounds that the allegations "overlap substantially" with those in the pending actions, and that the outcome of the pending actions would directly influence the course of the *Soltau* action. (Cohen Decl., Ex. H at 14:21-15:3.)  This action should be stayed for the same reasons.

## BACKGROUND

Insys, a Delaware corporation, manufactures and sells Subsys, a fentanyl product indicated for the treatment of breakthrough pain (*i.e.*, an intense increase or flare of otherwise stable and persistent pain) experienced by opioid-tolerant adults with cancer.  (*See* Compl. ¶¶ 3, 7, 111.)  Since 2013, the Company's sales and marketing practices with respect to Subsys have been the subject of several federal and state investigations and enforcement actions, as well as multiple putative securities class action lawsuits and derivative actions.  (*See id.* ¶¶ 42, 460-80.)

A.      **Criminal Action[1]**

1.      ***United States v. Babich*, No. 16-cr-10343-ADB (D. Mass.)**

On December 6, 2016, a federal grand jury in the District of Massachusetts issued an indictment against six former Insys employees, including Defendant Babich, for allegedly conspiring to provide kickbacks to physicians and to defraud healthcare insurers with respect to the sale and marketing of Subsys.  On October 26, 2017, the grand jury issued a superseding indictment in connection with the original indictment and added charges against Defendant Kapoor.  The defendants filed a motion to dismiss, which was argued on July 17, 2018.  On September 11, 2018, the U.S. Attorney's Office for the District of Massachusetts issued a second superseding indictment against all seven defendants on one

---

[1] In summarizing the factual allegations in the lawsuits described below, Defendants do not admit their truth.

racketeering conspiracy charge.  (Cohen Decl., Ex. A.)  On September 12, 2018, the Court

entered an order finding the motion to dismiss moot in light of the second superseding

indictment.  The defendants filed a motion to dismiss the second superseding indictment on

October 31, 2018, and the government's response is due on November 14, 2018.  Trial is

scheduled to commence on January 28, 2019, and the court has indicated it anticipates trial to

end prior to May 6, 2019.

      **B.**      **Securities Class Actions**

           **1.**      ***Di Donato v. Insys Therapeutics, Inc.*, No. 2:16-cv-00302-NVW (D. Ariz.) (the "*Di Donato* Action")**

In December 2016, a plaintiff shareholder filed a second amended class action

complaint alleging that Nominal Defendant Insys and Defendants Kapoor, Babich and Baker

violated Sections 10(b) and 20(a) of the Exchange Act by failing to disclose in SEC filings and

other pronouncements that Insys was engaged in the off-label promotion of Subsys, the payment

of kickbacks to Subsys prescribers, and efforts to mislead healthcare insurers into approving

payments for Subsys prescriptions.  (*See* Cohen Decl., Ex. B.)  On August 1, 2017, the

U.S. District Court for the District of Arizona granted in part and denied in part the defendants'

motion to dismiss the second amended class action complaint.  On April 13, 2018, the defendants

filed their answer to the remaining allegations in the second amended class action complaint.  On

May 4, 2018, Defendants filed an amended answer.  Discovery has commenced.

           **2.**      ***In re Insys Therapeutics, Inc. Sec. Litig.*, No. 1:17-cv-01954-PAC (S.D.N.Y.) (the "SDNY Action")**

In October 2017, a plaintiff shareholder filed a second amended class action

complaint alleging that Nominal Defendant Insys and Defendants Kapoor, Babich, Baker and

Vetticaden violated Sections 10(b) and 20(a) of the Exchange Act by making false and

misleading statements in the Company's SEC filings and other pronouncements with respect to:

(i) compliance with internal accounting policies; (ii) the effectiveness of internal controls over financial reporting; (iii) financial performance; and (iv) expectations for future financial performance. (*See* Cohen Decl., Ex. C.)

In November 2017, the defendants moved to dismiss the SDNY Action. In June 2018, the court granted the motion as to Defendant Vetticaden and otherwise denied the motion. The defendants filed an answer in late June 2018. Discovery has commenced.

## C.   Derivative Actions

### 1.   *In re Insys Therapeutics, Inc. Deriv. Litig.*, C.A. No. 12696-VCL (Del. Ch.) (the "Delaware Derivative Action")

In April 2017, Insys shareholders filed a consolidated derivative complaint in the Delaware Court of Chancery against Defendants Kapoor, Babich, Fourteau, Lapalme, Meyer and Tambi. (Cohen Decl., Ex. D.) The Delaware derivative plaintiffs also named Insys as a nominal defendant. The Delaware derivative plaintiffs allege that the individual defendants violated their fiduciary duties as directors and officers of Insys by knowingly approving, or failing to prevent, the off-label promotion of Subsys, the payment of kickbacks to Subsys prescribers, and efforts to mislead healthcare insurers into approving payments for Subsys prescriptions.

In May 2017, the defendants moved to dismiss or, in the alternative, to stay the Delaware derivative proceedings. In November 2017, the court granted the motion in part and stayed the proceedings. The Court of Chancery granted the stay for two reasons. *First*, the court held that simultaneous derivative and securities lawsuits would "requir[e] parties acting on behalf of Insys to adopt conflicting strategies in their respective lawsuits" and, therefore, the Company would face "a significant risk" that "likely would prejudice Insys". *In re Insys Therapeutics, Inc. Deriv. Litig.*, No. 12696-VCL, 2017 WL 5953515, at *3 (Del. Ch. Nov. 30, 2017). *Second*, the court recognized that "the full extent of damages due to Insys [in the

derivative action] cannot be known until the resolution of the [*Di Donato* Action] and government investigation [of Insys]".  *Id.*  Accordingly, the court held that "[t]o move forward with this case" under those circumstances would be "unduly complicated, inefficient, and unnecessary".  *Id.* (citation omitted).  The Delaware Derivative Action is currently stayed.

On March 6, 2018, the Board of Directors of Insys formed a Special Litigation Committee ("SLC") comprised of Insys directors Rohit Vishnoi and Vaseem Mahboob.  On March 27, 2018, the SLC retained William B. Chandler III of Wilson Sonsini Goodrich & Rosati, a former chancellor of the Delaware Court of Chancery, as independent legal counsel. The SLC is vested, under Del. Code Ann.,8 § 141(c)(2) (1953), with the full authority of the Board to take any actions, including directing the filing and prosecution of litigation, on behalf of the Company.  The SLC and its legal counsel are in the process of investigating the allegations in the Delaware Derivative Action and related litigations.

### 2.    *Soltau v. Kapoor, et al.*, No. 2:18-cv-01720-DWL (D. Ariz.)

In June 2018, a putative Insys shareholder filed a verified shareholder derivative complaint against the Individual Defendants and Nominal Defendant Insys.  (Cohen Decl., Ex. E.)  The plaintiff in *Soltau* alleges two types of claims.

*First*, he alleges disclosure-based claims that are substantially similar to the claims alleged in the *Di Donato* Action and the SDNY Action.  The *Soltau* plaintiff alleges that the Individual Defendants violated sections 10(b) and 20(a) of the Exchange Act by either causing the Company to make, failing to correct, and/or approving material misstatements in Insys's SEC filings and other pronouncements—the same alleged misstatements at issue in the *Di Donato* Action and the SDNY Action.  Like the plaintiffs in those cases, the *Soltau* plaintiff alleges that the statements are materially false and misleading because:  (i) Insys's revenues and profits were derived from the off-label promotion of Subsys, the payment of kickbacks to Subsys

prescribers, and efforts to mislead healthcare insurers into approving payments for Subsys prescriptions; and (ii) Insys failed to comply with its internal accounting policies and did not maintain effective internal controls over financial reporting.  The *Soltau* plaintiff also alleges that the Individual Defendants violated sections 10(b) and 20(a) of the Exchange Act by causing the Company to repurchase stock at prices that were artificially inflated due to the alleged misstatements.  Finally, the *Soltau* plaintiff alleges that the Individual Defendants violated Section 14(a) of the Exchange Act by omitting or causing the omission of material information regarding the sale and marketing of Subsys, and that such omissions rendered Insys's proxy statements materially misleading.

*Second*, the *Soltau* plaintiff alleges conduct-based claims that are substantially similar to the claims alleged in the Delaware Derivative Action and the federal criminal case. The *Soltau* plaintiff alleges, in particular, that the Individual Defendants breached their fiduciary duties to Insys by knowingly approving or failing to prevent the alleged off-label promotion of Subsys, the payment of kickbacks, and the commission of insurance fraud.

On July 10, 2018, David Bennett, another putative Insys shareholder, filed a verified shareholder derivative complaint against the Individual Defendants and Nominal Defendant Insys in the U.S. District Court for the District of Arizona.  (Cohen Decl., Ex. F.)  The *Bennett* complaint is identical to the complaint filed in *Soltau*.

On July 20, 2018, the Defendants answered the *Soltau* complaint.  That same day, the parties also *jointly* moved to stay the proceedings in *Soltau* pending the resolution of the *Di Donato* Action and the federal criminal action.

On July 31, 2018, the *Soltau* and *Bennett* plaintiffs filed a motion to consolidate their respective actions.  On August 10, 2018, the Court granted the motion, consolidated the cases and designated *Soltau* as the lead case.  (*See* Order, CV-18-01720-DWL, Dkt. No. 22.)

On September 12, 2018, the court granted the parties' joint motion to stay the consolidated *Soltau* action.  (Cohen Decl., Exs. G, H.)  The court held that a stay was warranted because "the allegations at issue . . . overlap substantially with the allegations asserted in several civil and criminal matters pending in the District of Arizona and other districts throughout the United States" and, thus, "the issues in this matter will be directly influenced by the proceedings in these other related matters".  (Cohen Decl., Ex. H at 14:21-15:3.)  The *Soltau* action is currently stayed.

   D.   **The Current Action**

The Plaintiff in this action is represented by the same counsel that represents the plaintiffs in the consolidated *Soltau* action, and the Complaint is a literal copy of the *Soltau* complaint.[2]  Thus, as in *Soltau*, Plaintiff alleges two types of claims.

*First*, he alleges disclosure-based claims that are, essentially, the derivative form of the claims alleged in the *Di Donato* Action and the SDNY Action (the "Disclosure-Based Claims").  Plaintiff alleges that the Individual Defendants violated Sections 10(b) and 20(a) of the Exchange Act by causing the Company to make, failing to correct, and/or approving the same alleged misstatements at issue in *Soltau* (which, in turn, are the same alleged misstatements at issue in the *Di Donato* Action and the SDNY Action).  Plaintiff also alleges that the Individual Defendants violated Sections 10(b) and 20(a) of the Exchange Act by causing the Company to

---

[2] Defendants answered the Complaint on October 29, 2018, and asserted numerous defenses, including that "[t]his action may not properly be maintained in this venue".  (Dkt. No. 27, p. 70 ¶ 38.)  Defendants specifically reserve, and do not waive, their defenses.

make the same repurchases of Insys shares at issue in *Soltau*.  Finally, Plaintiff alleges that the

Individual Defendants violated Section 14(a) of the Exchange Act by causing the Company to

issue proxy statements that were rendered materially false and misleading by the same alleged

omissions at issue in *Soltau*.

      *Second*, as in *Soltau*, Plaintiff alleges conduct-based claims that are substantially

similar to those alleged in the Delaware Derivative Action and the federal criminal case (the

"Conduct-Based Claims").  Namely, Plaintiff's Conduct-Based Claims allege that Defendants

breached their fiduciary duties to Insys by knowingly approving or failing to prevent the alleged

off-label promotion of Subsys, the payment of kickbacks, and the commission of insurance

fraud.  (*See* Compl. ¶¶ 16, 20, 38-39, 42-43, 80-90, 490-95, 549-63.)

## ARGUMENT

## I.       THIS DERIVATIVE ACTION SHOULD BE STAYED.

      The Court should stay this derivative action until the pending securities and

criminal actions against Nominal Defendant Insys and certain of the Individual Defendants are

resolved.

      The power to stay proceedings is "incidental to the power inherent in every court

to control the disposition of the causes on its docket with economy of time and effort for itself,

for counsel, and for litigants".  *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 96 (2d

Cir. 2012) (quoting *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936)).  The Court's inherent

power "to control the disposition of the cases on its docket" extends to derivative actions.  *See*

*Milliken v. Am. Realty Capital Hospitality Advisors, LLC*, No. 18-CV-1757 (VEC), 2018 WL

3745669, at *4 (S.D.N.Y. Aug. 7, 2018).

      Courts routinely hold that derivative actions should be stayed pending the

resolution of related securities class actions, where, as here, the potential for duplication is great.

*See, e.g.*,  *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 17-CV-5916(AJN),

2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) (staying a second, later-filed proceeding

pending the resolution of underlying litigation because it is was a "more efficient way to

sequence resolution of these two related actions").  Though the "degree to which two actions

overlap is relevant to a court's determination of whether a stay is warranted . . . parties and

claims need not be identical in order for one action to be stayed . . . in deference to an earlier

action".  *Readick v. Avis Budget Grp., Inc.*, No. 12 CIV. 3988 PGG, 2014 WL 1683799, at *2

(S.D.N.Y. Apr. 28, 2014) (internal quotations omitted).  Rather, "a court m[ay], in the interest of

judicial economy, enter a stay pending the outcome of proceedings which bear upon the case,

even if such proceedings are not necessarily controlling of the action that is to be stayed".

*LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

> In deciding whether to grant a stay, courts in the Second Circuit examine the

following five factors:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil
> litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the
> private interests of and burden on the defendants; (3) the interests of the courts;
> (4) the interests of persons not parties to the civil litigation; and (5) the public
> interest".

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Protection Agency*, 630 F. Supp.

2d 295, 304 (S.D.N.Y. 2009) (collecting cases) (citing *LaSala*, 399 F. Supp. 2d. at 427).  In this

case, each of those factors weighs in favor of granting a stay.

## A.  Plaintiffs Would Not Be Unduly Burdened by a Stay.

> Any prejudice to Plaintiff from a stay of this action would be minimal.

> *First*, Plaintiff's counsel has already consented to a stay of the *Soltau* action.  The

allegations and claims in that action are literally identical to those in this action. If the plaintiff in

*Soltau* was not unduly prejudiced by a stay, then the Plaintiff in this case will not be unduly prejudiced by a stay.

Second, any risks associated with delaying discovery are mitigated because Defendants have already collected and preserved over four million documents in connection with investigations of and enforcement actions against Insys by federal and state government authorities.  Since December 2013, Insys has issued multiple litigation holds and preserved the following categories of materials (collectively, the "Preserved Materials"):  (i) all company email; and (ii) all data materials and electronically-stored information, including correspondence, notes, records, emails, spreadsheets, images, PDFs, databases, calendar entries and information stored on personal digital assistant devices, personal computers, external hard drives, "thumb" or "jump" drives, CDs, DVDs or any other medium relating to Subsys, Insys's promotional strategies, transfers of value, advisory boards, educational or research grants, internal reports or reimbursement programs.  Defendants anticipate that the discovery Plaintiff will likely seek in this case will substantially overlap with the Preserved Materials.  Accordingly, the documents relevant to this action are not at risk of imminent loss or destruction.  *See Kelleher v. ADVO*, No. 3:06CV01422 (AVC), 2007 WL 1232177, at *3-4 (D. Conn. Apr. 24, 2007) (refusing to lift the PSLRA-mandated stay on discovery where defendants had taken steps to safeguard evidence and the potential loss of evidence was merely speculative); *In re Vivendi Universal, S.A. Securities Litigation*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (finding "the risk of loss of documents to be minimal" where defendants represented "that they have copies of all of the documents . . . and that they must and will be preserved").

Furthermore, Defendants are willing to produce to Plaintiff any discovery that they produce in the *Di Donato* Action and the SDNY Action during the pendency of the

requested stay.  To the extent that Plaintiff seeks to obtain supplemental discovery, he will be

free to do so once the stay is lifted.

        *Third*, as a practical matter, a stay cannot significantly interfere with Plaintiff's

interest in proceeding expeditiously with this derivative action because the damages allegedly

due to Nominal Defendant Insys cannot be determined until the other pending actions are

resolved.  *See In re Massey Energy Co.*, C.A. No. 5430-VCS, 2011 WL 2176479, at *26

(Del. Ch. May 31, 2011) (denying plaintiffs' motion for a preliminary injunction on the grounds

that they failed to demonstrate a reasonable probability of success on the merits of a related

derivative action because "[o]ne cannot even rationally determine what the potential derivative

liability is until the direct liability [the company] faces is determined").  The damage to Insys

alleged in the Complaint was purportedly caused by the conduct alleged in the pending securities

and criminal actions.  (*See* Compl. ¶¶ 42-43, 496-500.)  Therefore, the full amount of those

damages, if any, cannot be ascertained until the Individual Defendants' alleged liability in those

actions has been fully adjudicated.

        In sum, the first factor militates in favor of granting the stay.

**B.**    **Defendants Would Be Significantly Burdened If This Action Were To Proceed.**

        Allowing this derivative action to proceed could impose significant hardship on

Insys by potentially requiring the Company to work at cross-purposes with itself in the other

pending actions, particularly the securities actions.  Courts recognize that a shareholder's

prosecution of derivative claims on behalf of the corporation can severely harm the corporation's

defense in a related action:

> "[I]t is not practical for two actors—[the derivative plaintiff] and [the Company's]
> board—to pursue divergent strategies in two simultaneous actions on behalf of the
> same entity . . . .  Prosecution of [the] derivative action would involve taking
> actions designed to refute the merits of the Company's defense of the Securities

> Class Action, and vice versa. The Individual Defendants are likely witnesses in both cases, but [the derivative plaintiff] must attempt to undermine their credibility while the Company presumably will attempt to rely on their veracity. The potential for such conflicts . . . creates a significant risk that prosecution of [the derivative] case will prejudice [the Company]. For example, party admissions and adverse judicial rulings in this action might estop the Company from advancing contrary assertions on its own behalf in the Securities Class Action. . . . In contrast, staying this action for the immediate future would minimize these risks of prejudice to [the Company's] defense of the Securities Class Action."

*Brenner v. Albrecht*, 2012 WL 252286, at *5-6 (Del. Ch. 2012).  Accordingly, "Courts generally stay a shareholder derivative suit until the culmination of a securities class action when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter."  *In re STEC, Inc. Derivative Litig.*, No. CV 10-00667-JVS (MLGx), 2012 WL 8978155, at *4 (C.D. Cal. Jan. 11, 2012) (collecting cases and staying derivative action pending resolution of securities class action); *see also In re DaVita Inc. Stockholder Derivative Litig.*, No. CV 17-152-MPT, 2018 WL 3105061, at *4 (D. Del. June 25, 2018) (staying the action "will relieve the tension on [the corporation] caused by alleging wrongful conduct in this matter while defending against substantially similar allegations of wrongful conduct in the Securities Action"); *In re Groupon Derivative Litig.,* 882 F. Supp. 2d 1043, 1052 (N.D. Ill. 2012) (granting stay because "proceeding with the derivative action while the class action is pending may prejudice [the company's] defense to the securities claims"); *In re First Solar Derivative Litig.*, No. CV-12-00769-PHX-DGC, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (staying derivative action pending resolution of securities class action because the company "face[s] the practical difficulty of pursuing potentially divergent strategies if the two actions are litigated simultaneously"); *In re Ormat Techs., Inc.*, No. 3:10-cv-0017-ECR-RAM, 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011) (staying derivative action pending resolution of securities class action based on "the potential harm to [the company], the party on whose behalf this derivative suit has been brought"); *Sellers on behalf of Nominal Defendant*

*21st Century Holding Co. v. Lawson*, No. 08-60374-CIV-COHN/SELTZER, 2009 WL

10698793, at *2 (S.D. Fla. Mar. 30, 2009) ("It is likely that Plaintiff will seek to undermine the

Individual Defendants' credibility to pursue the Derivative Action which could, in turn,

undermine the defenses raised in the Class Action."); *Rosenblum ex rel. Amgen, Inc. v. Sharer*,

No. CV 07–6140 PSG (PLAx), 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008) (staying

derivative action pending resolution of securities class action where "denying a stay will

potentially cause substantial harm to [the corporation], the party on whose behalf this derivative

action has been brought" because of the possibility of "the liability of the officers being imputed

to the corporation"); *Walner v. Friedman*, 410 F. Supp. 29, 33 (S.D.N.Y. 1975) (staying

derivative action pending resolution of securities class action because "[t]he derivative claims are

an essential part of the controversy presented in [the securities class action] and any

fragmentation thereof will impede the administration of justice and may harm the corporation or

its shareholders.")

      Here, permitting this action to proceed could jeopardize Insys's defense in the

pending securities actions.  There can be no dispute that Plaintiff's Disclosure-Based Claims

arise from "the same factual allegations" at issue in the *Di Donato* Action and the SDNY Action.

*In re STEC*, 2012 WL 8978155, at *4.  Consequently, the very evidence that would tend to prove

Plaintiff's case in this action—*i.e.*, that Insys's officers and directors made false and misleading

statements that violated the securities laws—could "undermine" Insys's defense in the pending

securities actions.  *Id.* at *6.

      Additionally, because the SLC is currently investigating the alleged practices

from which Plaintiff's Conduct-Based Claims derive, "simultaneously proceeding with discovery

in this action would be onerous and duplicative" for Insys.  *Milliken*, 2018 WL 3745669, at *4

13

(staying federal derivative action in part because the nominal defendant company had appointed a SLC that was concurrently investigating the claims at issue).

Accordingly, the second factor militates in favor of granting the stay.

**C.     A Stay Will Promote Judicial Economy.**

A stay would serve the interests of the court by promoting judicial economy.  As noted above, the damages allegedly due to Nominal Defendant Insys under Plaintiff's Disclosure-Based Claims cannot be determined until the pending securities actions are resolved. Similarly, the outcome of the federal criminal case against Defendants Kapoor and Babich will directly influence the adjudication of Plaintiff's Conduct-Based Claims.  Indeed, in staying the *Soltau* action, the U.S. District Court for the District of Arizona held that "the issues in [*Soltau*] will be directly influenced by the proceedings in these other related matters".  (Cohen Decl., Ex. H at 15:1-3.)  Similarly, in staying the Delaware Derivative Action, the Delaware Court of Chancery held that it would be "'unduly complicated, inefficient, and unnecessary'" for the derivative action "[t]o move forward" until "the full extent of damages due to Insys" could be ascertained.  *In re Insys Therapeutics Inc. Deriv. Litig.*, 2017 WL 5953515, at *3 (citation omitted).  This reasoning is equally applicable here.  Staying this action is, thus, the most efficient way to sequence the resolution of the multiple pending, related actions.  *See Royal Park Investments*, 2018 WL 3849840, at *3; *Readick*, 2014 WL 1683799, at *5 (staying the second, later-filed proceeding pending resolution of the first-filed proceeding where "[t]hese two actions involve substantially duplicative claims"); *Blecker v. Lazard Freres & Co.*, No. 73 CIV. 4057, 1973 WL 451, at *2 (S.D.N.Y. Dec. 11, 1973) (granting a motion to stay where the multiple complaints at issue were "virtually identical" and "a prior determination of the facts underlying the instant federal claim would be dispositive of the [derivative] claim").

14

Furthermore, in light of the fact that Insys has formed a SLC to investigate the alleged practices from which Plaintiff's Conduct-Based Claims derive, a stay could permit early resolution of this action.  For example, in *Milliken*, in assessing the interests of the court in granting a stay, a court in this district held that a "SLC[] investigation could cause [the nominal defendant company] to take control of [the derivative] litigation on its own behalf, or it could yield information that would assist the parties' settlement negotiations or inform a motion to dismiss", and that "[a]ny one of these outcomes could facilitate early resolution of this case". 2018 WL 3745669, at *4.

The third factor thus militates in favor of granting the stay.

### D.      A Stay Will Promote the Public Interest.

Staying this proceeding will promote the public interest.  "Generally, considerations of judicial economy are viewed as relevant to the public interest".  *Specrite Design, LLC v. Elli N.Y. Design Corp.*, 16 Civ. 6154 (ER), 2017 WL 3105859, at *6 (S.D.N.Y. July 20, 2017).  In this case, since a stay will promote judicial economy, it will also further the public interest.  Moreover, staying this case "serves the interests of the public" because "it [would] affirm[] the important principle that a corporation has a right to investigate internal misconduct"—here, through the SLC's ongoing investigation—"and decide in the first instance whether to bring a lawsuit in its own name".  *Milliken*, 2018 WL 3745669, at *4.  Therefore, the fifth and final factor militates in favor of granting the stay.[3]

---

[3] As to the fourth factor, there is no reason to believe that a stay of this proceeding would harm the interests of persons not parties to this litigation.  To the contrary, "a stay avoids the burden that duplicative discovery would impose on any non-party employees or affiliates of the Company".  *Milliken*, 2018 WL 3745669, at *4.

## CONCLUSION

For the foregoing reasons, the Court should stay the proceedings until the other pending actions which directly affect the adjudication of this action are resolved.

November 9, 2018

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP**

  _/s Daniel Slifkin_
Daniel Slifkin
David M. Stuart
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dslifkin@cravath.com
dstuart@cravath.com

*Attorneys for Defendants Michael Babich, Darryl S. Baker, Patrick Fourteau, Pierre Lapalme, Steven Meyer, Brian Tambi, Santosh J. Vetticaden and Nominal Defendant Insys Therapeutics, Inc.*

16

*Filed with the consent of:*

**ROPES & GRAY LLP**

 *s/ Christian Reigstad*
Peter L. Welsh (*pro hac vice* application pending)
Keira Grimes (*pro hac vice* application pending)
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
(617) 951-7000
peter.welsh@ropesgray.com
keira.grimes@ropesgray.com

Christian Reigstad
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
christian.reigstad@ropesgray.com

*Attorneys for Defendant John N. Kapoor*

17